IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEL, a minor, by and through                    Civil No. 11-0987-AA
his parents TROY and TRENNA E.                    OPINION AND ORDER
LANDERS, and by his guardian
ad litem, TRENNA E. LANDERS,

        Plaintiff,

    v.

SHERWOOD SCHOOL DISTRICT; DAN
JAMISON; MICHELLE DeBOARD;
MATTHEW BORING; MELISSA GOFF;
DKL, a minor; MICHELLE
LEONARD; GREGORY W. LEONARD;
and DOES 1-10,

        Defendants.
_____

Steven M. McCarthy
McCarthy Law Offices
1265 Highway 1
Independence, Oregon 97351
    Attorney for plaintiff

Karen M. Vickers
Blake Fry
Mersereau Shannon LLP

Page 1 - OPINION AND ORDER

One SW Columbia Street, Suite 1600
Portland, Oregon 97258
     Attorneys for defendants Sherwood
     School District, Dan Jamison,
     Michelle DeBoard, Matthew Boring,
     and Melissa Goff

Steven A. Kraemer
Gregory R. Roberson
Hoffman, Hart & Wagner LLP
1000 SW Broadway, Twentieth Floor
Portland, Oregon 97205
     Attorneys for defendants DKL,
     Michelle Leonard, and Gregory W.
     Leonard

AIKEN, Chief Judge:

     Defendants Sherwood School District, Dan Jamison, Michelle

DeBoard, Matthew Boring, and Melissa Goff move to dismiss plaintiff

MEL's complaint for failure to state claims upon which relief can

be granted.  See Fed. R. Civ. P. 12(b)(6).  In addition, defendants

move to dismiss plaintiff's Oregon tort claims for lack of subject

matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  For the

reasons set forth below, defendants' motion is granted.

                          **BACKGROUND**

     Plaintiff, a minor, is a student at Sherwood High School (the

"School"), which lies within defendant Sherwood School District's

(the "District") territory.  During the relevant time period,

defendants Dan Jamison, Michelle DeBoard, Matthew Boring, and

Melissa Goff were employees of the School.

     In September 2009, plaintiff bumped into DKL, a fellow

student, while walking along a School corridor.  Prior to this

occurrence, plaintiff and DKL had never met.  Plaintiff believed

the bumping to be an accident and apologized.  Thereafter, DKL

Page 2 - OPINION AND ORDER

shouted profanities and made other threatening remarks at plaintiff each time they passed in the halls at School.

On October 29, 2009, plaintiff was struck in the face by DKL and subsequently knocked down by DKL's "leg sweep" while both parties were under the care and supervision of the District (the "Incident"). As a consequence of DKL's acts, plaintiff suffered the permanent loss of an upper front tooth, facial lacerations, a broken jaw, a broken nose, a concussion, bruises, an injury to his elbow, and an exacerbation of a previous knee injury, all of which resulted in extensive medical treatment and costs.

On August 15, 2011, plaintiff filed his original complaint in this Court on the basis of federal question jurisdiction. On August 19, 2001, plaintiff filed an amended complaint, alleging that defendants: 1) violated his "first amendment, due process and equal protection rights" as guaranteed by "the US Constitution, No Child Left Behind Act of 2001, Title IX, [and] IDEA" pursuant to 42 U.S.C. § 1983; 2) violated his "rights, privileges, or immunities secured by the Constitution and laws" pursuant to 42 U.S.C. § 1983; 3) committed negligence pursuant to Oregon tort law; and 4) committed intentional infliction of emotional distress ("IIED") pursuant to Oregon tort law. See generally Am. Compl.

In addition, plaintiff alleges that the District violated his liberty and property interests, pursuant to 42 U.S.C. § 1983, by having an official policy or custom to condone or tolerate bullying, harassment, and violence on School grounds. Id. at ¶¶ 59-63. Finally, against DKL and his parents, who are not parties

Page 3 - OPINION AND ORDER

to this motion, plaintiff alleges assault and battery pursuant to Oregon tort law.  Id. at ¶¶ 77-83.  As relief, plaintiff seeks general damages in the amount of $275,000, special damages for plaintiff's health care costs, "damages by way of punishment and example," attorney fees, and an injunction.  Subsequently, defendants moved to dismiss plaintiff's amended complaint.

## STANDARDS

Where plaintiff fails to establish that federal subject matter jurisdiction exists, the court must dismiss the action.  Fed. R. Civ. P. 12(b)(1),  Fed. R. Civ. P. 12(h)(3); see also Rattlesnake Coal. v. U.S. Envtl. Prot. Agency, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) (plaintiff bears burden of establishing subject matter jurisdiction).

Similarly, where plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  For the purpose of a motion to dismiss, the complaint is liberally construed in favor of plaintiff, and its allegations are taken as true.  Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).  Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).  Rather, to state a plausible claim for relief, the complaint "must contain

Page 4 - OPINION AND ORDER

sufficient allegations of underlying facts" to support its legal conclusions.   Starr v. Bacca, 652 F.3d 1202, 1216, reh'g en banc denied, 659 F.3d 850 (9th Cir. 2011).

## DISCUSSION

Defendants move to dismiss plaintiff's complaint under two theories: first, defendants contend that this Court lacks subject matter jurisdiction because plaintiff's state law tort claims are precluded by the Oregon Torts Claims Act ("OTCA")[1]; second, defendants assert that the complaint fails to state plausible claims for relief.

## I.   Notice Under the OTCA

Defendants contend that plaintiff's state law claims are prohibited under the OTCA because plaintiff failed to give timely notice.   Conversely, plaintiff asserts that no portion of his tort claims are proscribed because he "filed this action within two years of the incident," in accordance with the relevant statute of limitations.   Pl.'s Resp. to Mot. Dism. 10.

The OTCA provides the exclusive remedy for tort claims instituted against a "public body or an officer, employee or agent of a public body."   Or. Rev. Stat. §§ 30.260 et seq.   Under the OTCA, a minor plaintiff must provide notice of a claim within 270

---

[1] As a preliminary matter, it should be noted that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.   Thus, defendants misconstrue the effect of failing to comply with the OTCA notice provision.   Where notice is not timely under the OTCA, it does not divest this Court of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); the effect, instead, is that plaintiff is unable to state a claim upon which relief can be granted.

days after the alleged loss or injury.    Or. Rev. Stat. §§ 30.275(2), (3).    In addition, any action instituted against a public body or its employees "shall be commenced within two years after the alleged loss or injury." Or. Rev. Stat. § 30.275(9).    In either instance, the "time period begins to run on the first day that there has been some discernible injury and the plaintiff has had a reasonable opportunity to discover both the injury and the identity of the tortfeasor." Vineyard v. Soto, 2011 WL 3705001, at *5 n.3 (D.Or. July 21, 2011), adopted by, 2011 WL 3704177 (D.Or. Aug. 22, 2011) (citing Adams v. Or. State Police, 289 Or. 233, 235, 611 P.2d 1153 (1980)).

Here, plaintiff asserts state law claims for negligence and IIED against the District and its employees; therefore, the OTCA applies.  See Or. Rev. Stat. § 30.275; see also Or. Rev. Stat. §§ 174.109, 174.117 (defining "public body" for the purposes of OTCA as a "school district").  Under the OTCA, plaintiff was required to provide notice of these claims no later than July 26, 2010, which is 270 days from date of the Incident.  See Plumeau v. Yamhill Cnty. Sch. Dist. ("Plumeau I"), 907 F.Supp. 1423, 1433-34 (D.Or. 1995), aff'd, 130 F.3d 432 (9th Cir. 1997).    It is undisputed, however, that plaintiff did not provide notice until August 9, 2010.  See Am. Comp. ¶ 16.  Accordingly, because plaintiff did not furnish the requisite notice until approximately two weeks after the statutory period elapsed, his claims for negligence and IIED are time-barred.

Plaintiff's assertion that his "state law claims are not time-

Page 6 - OPINION AND ORDER

barred because [p]laintiff filed his OTCA claims and this action within two years of the incident" confuses the issue of notice with the statute of limitations. See Pl.'s Resp. to Mot. Dism. 10. While similar, these temporal restrictions serve different functions. The notice provision of the OTCA exists "to allow the public body to investigate the claim while evidence is still fresh and to promptly correct any defect from which the claim arose." Vineyard, 2011 WL 3705001 at *4 (citing Perez v. Bay Area Hosp., 315 Or. 474, 482, 846 P.2d 405 (1993)). The purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims by ensuring that such claims are commenced a certain amount of time from the occurrence of the loss or injury. Sousa v. Unilab Corp. Class II (Non-Exempt) Members Grp. Benefit Plan, 83 Fed.Appx. 954, 956 (9th Cir. 2003). As such, the requirements of the notice provision and the statute of limitations are not synonymous; rather, in order to institute a tort claim against a public body under the OTCA, plaintiff must meet two distinct requirements: first, plaintiff must give notice to the public body in accordance with Or. Rev. Stat. §§ 30.275(2) and (3); second, plaintiff must file the action within the limitations period in accordance with Or. Rev. Stat. § 30.275(9).

Accordingly, since notice was untimely, the fact that plaintiff filed this action within the statute of limitations is irrelevant. Therefore, defendants' motion to dismiss is granted in regard to plaintiff's negligence and IIED claims.

Page 7 - OPINION AND ORDER

II.  Failure to State a Claim

Three of plaintiff's remaining claims allege liability pursuant to 28 U.S.C. § 1983.  Specifically, plaintiff alleges that: 1) his substantive due process interest in bodily integrity was violated because defendants knew or should have know that DKL posed a physical threat and did nothing to prevent the Incident; 2) his substantive due process interest in being free from humiliation was violated because defendants failed to prevent plaintiff's fellow classmates from ridiculing and ostracizing him after the Incident; and 3) these substantive due process interests were violated by the District itself pursuant to a policy or custom to permit bullying and harassment on School grounds.

Plaintiff's fourth and final claim seeks an injunction, requiring defendants to "engag[e] in the necessary steps to implement appropriate policies and procedures to prevent the culture and incidence of bullying, harassment, and attacks such as are manifest in this action."  Am. Compl. ¶ 86.

A.  Claims Pursuant to 28 U.S.C. § 1983

To state a claim under section 1983, plaintiff must allege that: 1) the conduct complained of deprived him of an existing federal constitutional or statutory right; and 2) the conduct was committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); L.W. v. Grubbs ("Grubbs I"), 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993).

i.  Deprivation of an Existing Constitutional Right

It is undisputed that there is a federally recognized liberty

Page 8 - OPINION AND ORDER

interest in the right to bodily integrity under the Fourteenth Amendment. Plumeau I, 907 F.Supp. at 1435 (citing Ingraham v. Wright, 430 U.S. 651, 673-74 (1977)). The issue, however, of whether there is a federally recognized liberty or property interest in an individual's right to be free from humiliation is a different matter.

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994) (citations omitted). Here, plaintiff's claim to be free from humiliation is markedly different from those previously recognized rights. Further, plaintiff has not cited to, and this Court is not aware of, any authority that holds, either directly or by analogy, that the Due Process Clause of the Fourteenth Amendment protects such an interest. In fact, plaintiff wholly fails to address this issue in his complaint or response brief. Therefore, this Court declines to recognize a substantive due process interest in the right to be free from humiliation. Accordingly, defendants' motion to dismiss is granted in regard to plaintiff's second section 1983 claim.

ii. Section 1983 Claim Against the District's Employees

Generally, state actors are "not liable for . . . omissions" under 28 U.S.C. § 1983. Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000). Similarly, the Fourteenth Amendment's Due Process Clause does not confer any affirmative rights: "[t]he Clause is phrased as a limitation on the State's

Page 9 - OPINION AND ORDER

power to act, not as a guarantee of certain minimal levels of safety and security." Deshaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989); see also Johnson v. City of Seattle, 474 F.3d 634, 638-39 (9th Cir. 2007). As such, "the Fourteenth Amendment does not impose a duty on [state actors] to protect individuals from third parties." Morgan v. Gonzales, 495 F.3d 1084, 1093 (9th Cir. 2007), cert. denied, 552 U.S. 1186 (2008).

There are, however, two exceptions to this rule: 1) when a "special relationship" exists between plaintiff and the state actor (the "special relationship exception"); and 2) when the state actor affirmatively places plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger" (the "danger creation exception"). Patel v. Kent Sch. Dist., 648 F.3d 965, 971-72 (9th Cir. 2011) (citing DeShaney, 489 U.S. at 198-202 and L.W. v. Grubbs ("Grubbs II"), 92 F.3d 894, 900 (9th Cir. 1996)). If either exception applies, a state actor's omission or failure to act may give rise to a claim under 29 U.S.C. § 1983. Id. at 972.

Plaintiff asserts that both of the exceptions are implicated; conversely, defendants argue that neither is relevant to this case. It must therefore be determined whether either of these exceptions apply.

### a.  Special Relationship Exception

The special relationship exception applies where a state actor abuses a special state-created relationship with an individual. Morgan, 495 F.3d at 1093-94.  This exception has only been

recognized where a plaintiff is "in custody." See Youngerberg v. Romeo, 457 U.S. 307, 324 (1982) (special relationship exists between involuntarily committed mental patient and the state), Estelle v. Gamble, 429 U.S. 97, 104-5 (1976) (special relationship exists between incarcerated prisoner and the state); see also Funez ex rel. Funez v. Guzman, 687 F.Supp.2d 1214, 1229 (D.Or. 2009). In other words, the special relationship exception applies "'[o]nly where the state has exercised its power so as to render an individual unable to care for himself.'" Funez, 687 F.Supp.2d at 1229 (quoting J.O. v. Alton Comm. Unit Sch. Dist. 11, 909 F.2d 267, 272-73 (7th Cir. 1990)).

Plaintiff asserts that a special relationship existed between himself and the District because students are required to attend schools, which, in turn, owe students a certain duty of care. In support of his contention, plaintiff cites to Fazzolari v. Portland Sch. Dist. No. 1J[2] and a number of other Oregon cases discussing negligence, two second circuit cases, and a case from the Eastern District of New York. See Pl.'s Resp. to Mot. Dism. 6. Plaintiff's argument, however, must be rejected for two reasons.

First, while plaintiff is correct that the Eastern District of New York held that a special relationship may exist between a student and a school district, that case is distinguishable. See Pagano v. Massapequa Pub. Schs., 714 F.Supp. 641, 643 (E.D.N.Y. 1989). In Pagano, the plaintiff, a minor student, alleged that he

---

[2] Fazzolari v. Portland Sch. Dist. No. 1J, 303 Or. 1, 734 P.2d 1326 (1987).

reported to school officials seventeen instances of physical and verbal abuse by other students.  Id. at 642.  After each report, school officials "expressly said they would take the necessary steps to prevent such attacks from occurring in the future."  Id. The school, however, never took any preventative measures to ensure plaintiff's right to bodily integrity.  Id.  In discussing defendants' motion to dismiss plaintiff's section 1983 claim, the court held that, where the school actually knew of the abuse and promised to take affirmative steps to remedy it, defendants' actions "may be considered to rise to the level of . . . an affirmative duty" so as to establish a special relationship.  Id. at 643.

Here, plaintiff has not alleged that he reported DKL's verbal abuse to defendants or that defendants agreed to assume an affirmative duty to protect plaintiff.  Moreover, plaintiff alleges a single violation of his due process right to bodily integrity. Accordingly, unlike Pagano, plaintiff has not asserted sufficiently frequent violations of his constitutional rights so as to trigger the exception.

Second, the District of Oregon and the Ninth Circuit have previously addressed this precise issue, expressly holding that "a student is not 'in custody' at school within the meaning of the special-relationship exception."  Funez, 687 F.Supp.2d at 1229 (quoting J.O., 909 F.2d at 272-73); see also Patel, 648 F.3d at 972-74 (no special relationship exists between schools and students despite the fact that attendance is compulsory and schools have in

loco parentis duties).

In Funez, the plaintiff, a disabled high school student of Hispanic descent, was attacked and beaten by nine other high school students while under the care and supervision of the Hood River County School District. Id. at 1218. Plaintiff was hospitalized and underwent extensive surgery. Id. As a result of this attack, plaintiff sued the school district, alleging that it violated his right to substantive due process under the Fourteenth Amendment pursuant to 28 U.S.C. § 1983. Id. The school district moved to dismiss plaintiff's complaint for failure to state a claim. Id. at 1218-19.

Specifically, the plaintiff in Funez alleged that the special relationship exception applied, relying "on the fact that he is required to attend school and on the reasoning of Fazzolari." Id. at 1229. The Funez court, however, rejected plaintiff's argument. Id. As a preliminary matter, the court held that the principles in Fazzolari were distinguishable and, as such, not binding: "Fazzolari . . . was a negligence action analyzed under Oregon law and the Fazzolari court did not address due process under the United States constitution of the special-relationship exception." Id.

More importantly, the court held that compulsory school attendance does not render a child "in custody"; the requirement that a child attend school does not negate the fact that parents retain the primary child-care responsibilities: "'[w]e do not suggest that prisoners and mental patients are an exhaustive list

Page 13 - OPINION AND ORDER

of all persons to whom the state owes some affirmative duties, but the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises. Whatever duty of protection does arise is best left to laws outside the Constitution.'" Id. (quoting J.O., 909 F.2d at 272-73). As such, the Funez court dismissed plaintiff's section 1983 claim pursuant to Fed. R. Civ. P. 12(b)(6). Id. at 1230.

Here, plaintiff is asserting an identical argument based on analogous circumstances to those in Funez; in fact, there are no significant factual distinctions between the two cases. Thus, while this Court has sympathy for plaintiff's suffering and for Mr. and Ms. Edwards' positions as concerned and caring parents, it cannot depart from this well-settled authority. Accordingly, for the same reasons articulated by the District of Oregon and the Ninth Circuit, I find that plaintiff was not "in custody" at School within the meaning of the exception when the Incident occurred. Therefore, plaintiff cannot state a claim against defendants for violations of his due process rights under the special relationship exception.

### b.   Danger Creation Exception

To state a claim under the danger creation exception, a plaintiff must show that the state affirmatively placed plaintiff in a position of danger, "'that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced.'" Johnson, 474 F.3d at 639 (quoting Kennedy v.

City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006) and DeShaney, 489 U.S. at 197)).  The exception, however, "does not create a broad rule that makes state officials liable under the Fourteenth Amendment whenever they increase the risk of some harm to members of the public." Huffman v. Cnty. of L.A., 147 F.3d 1054, 1061 (9th Cir. 1998).

Accordingly, to trigger the danger creation exception, plaintiff must prove that: 1) the state "affirmatively place[d plainitff] in a position of danger" or "'effectively prevented [plaintiff] from protecting himself or prevented access to outside sources of help'"; and 2) the state acted with "deliberate indifference" to the state-created danger. G.C. ex rel. Counts v. N. Clackamas Sch. Dist., 654 F.Supp.2d 1226, 1247 (D.Or. 2009) (quoting Morgan v. Bend-La Pine Sch. Dist., 2009 WL 312423, at *11 (D.Or. Feb. 6, 2009) and Ridgefield, 439 F.3d at 1064)); see also Huffman, 147 F.3d at 1061.

To establish deliberate indifference, plaintiff must show: "'1) an unusually serious risk of harm ..., 2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and 3) defendant's failure to take obvious steps to address that known, serious risk.'" Funez, 687 F.Supp.2d at 1228 (quoting Grubbs II, 92 F.3d at 900).  "In other words, the plaintiff must show the defendant knows 'something is going to happen but ignores the risk and exposes someone to it.'" Id. (quoting Grubbs II, 92 F.3d at 900).  "Negligence on the part of state officials, whether simple or gross, is not sufficient to establish liability for a

Page 15 - OPINION AND ORDER

due-process violation." Id. (citing Grubbs II, 92 F.3d at 898-900 and Daniels v. Williams, 474 U.S. 327, 331-35 (1986)). As such, deliberate indifference is a "'stringent standard of fault,'" requiring proof of "a culpable mental state." Patel, 648 F.3d at 974 (quoting Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)).

Here, plaintiff's complaint alleges that, because DKL was a valued athlete, he "was at all times either expressly encouraged, or not discouraged in any way, from the demonstration and exercise of unequal and coercive power by adult defendants." Am. Compl. ¶ 19. Plaintiff also asserts that defendants "had actual or constructive notice of the anti-social and combative and sexually repressed conduct of DKL prior to [the date of the Incident]" because of "conduct he exhibited at Sherwood Middle School." Id. at ¶ 33. Further, plaintiff contends that "defendants knew or should have known that DKL posed an immediate and continuous threat of intentional random violence . . . [to] the health, safety, and well-being of other students, including [plaintiff]." Id. at ¶ 39. In addition, for the first time in his response brief, plaintiff argues that the District created the danger by violating "Oregon's anti-bullying law at ORS 339.351 to 339.364." Pl.'s Resp. to Mot. Dism. 9.

While plaintiff states that defendants "expressly encouraged, or not discouraged in any way" DKL's behavior, he does not allege any facts in support of this legal conclusion. Accordingly, this bare assertion is not entitled to the presumption of truth. See Ashcroft, 129 S.Ct. at 1951; see also Starr, 652 F.3d at 1216.

Page 16 - OPINION AND ORDER

Regardless, even accepting this allegation as true, plaintiff fails to plead that defendants required him to be in the School hallway in which he was attacked or prevented him from waiting in another area in between classes. Further, plaintiff does not allege that defendants deprived him of means to defend himself or cut him off from sources of aid. Moreover, plaintiff fails to articulate how the alleged failure to successfully implement "Oregon's anti-bullying law"[3] can satisfy the affirmative act required in a danger creation exception case. As such, these factual allegations are inadequate to establish that defendants affirmatively created the danger that DKL ultimately posed to plaintiff. Thus, plaintiff is unable to state the first element of the danger creation exception.

Nevertheless, even if plaintiff sufficiently plead the first element of this exception, he is unable to demonstrate deliberate indifference. Plaintiff states that defendants "had actual or constructive notice" that DKL was dangerous and that they "knew or should have known" that DKL's dangerous propensities could lead to violence at School; plaintiff, however, at no point asserts that defendants actually knew of or were willfully blind to the growing tension between plaintiff and DKL. As such, there are no allegations from which this Court could infer that defendants

---

[3] Despite plaintiff's assertions to the contrary, Oregon does not statutorily regulate bullying. Rather, the statutes that plaintiff cites to, Or. Rev. Stat. §§ 339.351 through 339.364, regulate schools districts, requiring each district to "adopt a policy prohibiting harassment, intimidation or bullying and prohibiting cyberbullying." Or. Rev. Stat. § 339.356. Plaintiff acknowledges, however, that the District has such a policy in place. See Am. Compl. ¶ 34.

intended to expose plaintiff to DKL's attack or otherwise knew that DKL was going to assault plaintiff and ignored the risk.

Thus, while defendants may have acted negligently by failing to properly supervise and police the School for bullying, plaintiff's complaint fails to plead a requisite element of this exception. See, e.g, Funez, 687 F.Supp.2d at 1228 (allegations in a complaint that someone is dangerous and that a state official failed to adequately address that danger are insufficient to show deliberate indifference). Therefore, plaintiff cannot state a claim against defendants for violations of his due process rights under the danger creation exception.

### iii. Section 1983 Against the District

A local governing body, such as a school district, cannot be liable under 28 U.S.C. § 1983 because of its status as an employer. Monell v. Dept. of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (local governing body cannot be vicariously liable based on respondeat superior theory under section 1983). Rather, "liability of a local governing body arises only when 'action pursuant to official ... policy of some nature caused a constitutional tort.'" Funez, 687 F.Supp.2d at 1224 (quoting Monell, 436 U.S. at 691). As such, the circumstances in which a governing body may be liable under 28 U.S.C. § 1983 are "carefully circumscribed." Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).

Thus, to state a claim against a school district under section 1983, plaintiff must allege that: 1) he was deprived of a constitutional right; 2) the school district had a policy or

Page 18 - OPINION AND ORDER

custom; 3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional rights; and 4) the policy or custom was the moving force behind the constitutional violation.  Funez, 687 F.Supp.2d at 1224 (citing Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2001), Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill ("Plumeau II"), 130 F.3d 432, 438 (9th Cir. 1997), and Harry A. v. Duncan, 234 Fed.Appx. 463, 464-65 (9th Cir. 2007)).  A single constitutional deprivation is generally insufficient to establish a practice or custom.   Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy")).

Here, the entirety of plaintiff's section 1983 claim asserted against the District is nothing more than a bare recitation of the requisite elements: 1) "[t]he individual defendants' acts and omissions . . . resulted in violations of [plaintiff's] liberty and property interests"; 2) "[t]he actions and omissions of the individual defendants . . . exhibit official practices, customs, and/or policies of defendant the District"; 3) "[t]he District's actions, omissions, policies, customs, and/or practices alleged herein amount to deliberate indifference to the plaintiff's constitutional and statutory rights"; and 4) "[t]he District's polices and/or practices were the moving force behind the

constitutional and statutory violations alleged herein." Am. Compl. ¶¶ 59-62. These allegations, however, are conclusory and without factual support. Plaintiff has provided no facts from which to infer that the District condones or ignores violence and harassment at School.

In fact, by plaintiff's own admission, the District has "mandatory, non-discretionary rules, policies and procedures which address . . . the issues of bullying, aggressive and harassing conduct by students against other students." Am. Compl. ¶ 34. Thus, the District has an official policy against bullying and violence at School. Plaintiff contends that the District's rules were "ineffective and incomplete"; while this may be true, it is unclear to this Court how the District's anti-bullying rules, when not properly enforced, equate to the deliberate choice to ignore or encourage student-on-student violence on School grounds.

Moreover, plaintiff's theory of liability arises out of a single Incident. A single constitutional deprivation is inadequate to establish a policy or custom. See Christie, 176 F.3d at 1235. Therefore, without more, plaintiff is unable to allege practices of sufficient duration, frequency and consistency so as to rise to the level of an official policy or custom.

Thus, while this Court is dismayed by the milieu of hostility and violence in the public school system, seeking to impose liability against a school district pursuant to 28 U.S.C. § 1983 for the abuse perpetrated by one student against another is simply not the proper avenue through which to redress this type of injury.

Page 20 - OPINION AND ORDER

B.  Injunctive Relief

Finally, plaintiff seeks an injunction, requiring defendants to more vigorously enforce their anti-bullying rules.  See Am. Compl. ¶ 86.

"[A]n injunction is appropriate only when necessary to prevent irreparable harm." Nat'l Wildlife Fed'n v. Cosgriffe, 21 F.Supp.2d 1211, 1218 (D.Or. 1998) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 314-15 (1982)).  Accordingly, as a matter of equitable discretion, an injunction is "'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (quoting Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 (2008)).  Such a remedy must be narrowly tailored: "'injunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs.'" Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991) (quoting Califano v. Yamasaki, 442 U.S. 682, 702 (1979)).

To state a claim for injunctive relief, plaintiff must demonstrate: 1) that he suffered an injury in fact; 2) that the injury stems from defendants' challenged action; and 3) that the relief sought will redress the injury.    Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004).    In addition, plaintiff must show "a sufficient likelihood that [he] will again be wronged in a similar way." City of L.A. v. Lyons, 461 U.S. 95, 111 (1983); see also Fortyune, 364 F.3d at 1081.    The

likelihood of future injury is sufficient where there is a "real and immediate threat of repeated injury." O'Shea v. Littleton, 414 U.S. 488, 496 (1974); see also Fortyune, 364 F.3d at 1081.

Here, as discussed above, plaintiff is unable to state a claim for violations of his constitutional or state common law rights. Further, plaintiff has not alleged that there is a real and immediate threat of repeated injury. Rather, plaintiff asserts that "there is a substantial likelihood the problems created [by the failure to successfully implement the District's anti-bullying policy] will persist unabated." Am. Compl. ¶ 86. This allegation, in addition to being conclusory, is too broad and indefinite to demonstrate that there is a strong probability that DKL will attack plaintiff again while at School.   In addition, it would be difficult, if not impossible, for this Court to fashion an injunction that provides complete relief to plaintiff without being overly broad.   Accordingly, defendants' motion to dismiss is granted in regard to plaintiff's claim for injunctive relief.

## CONCLUSION

Defendants' motion to dismiss (doc. 9) is GRANTED. Plaintiff's claims are DISMISSED. As such, defendants' request for oral argument is DENIED as unnecessary.

Therefore, this case is REMANDED to state court, as plaintiff's only remaining claims are those asserted against DKL and his parents for assault and battery, which arise under Oregon law.

IT IS SO ORDERED.

Dated this 14 of December 2011.

Ann Aiken
United States District Judge